U.S. v. Tip the Scale, LLC, 3:24-cr-05013
Attachment A

# LD KITCHEN AND BATH

# IMPORTER'S COMPLIANCE PLAN

## 1. Commitment to Compliance

LD Kitchen and Bath ("LDKB" or the "Company") is committed to the highest standards of product quality, safety, and business integrity. LDKB requires that its officers, employees, contractors, and business partners (collectively, "agents") comply with all applicable laws and regulations, including those governing the importation of goods from overseas suppliers. This Importer's Compliance Plan is designed to help LDKB's agents comply with applicable U.S. law, including ensuring 1) familiarity with U.S. Customs and Border Protection ("CBP") regulations and the Harmonized Tariff Schedule of the United States ("HTSUS"); 2) accuracy of Customs entry documentation, including merchandise descriptions, tariff classification, valuation, country of origin, and merchandise markings; 3) non-use of forced labor; and 4) compliance with the Lacey Act.

## 2. Summary of Applicable Laws

### a. Importer's Duty of Reasonable Care

U.S. law requires that importers use reasonable care procedures when importing goods into the United States. CBP expects "informed compliance" from importers, which means that importers should establish reliable procedures to ensure that their entry documentation is truthful and correct so that CBP can properly assess duties, collect accurate statistics, and determine whether all applicable legal requirements pertaining to the imported merchandise are met. These requirements of "informed compliance" and "reasonable procedures" apply to many different legal obligations involved in importation, including but not limited to the complete and accurate description of merchandise required by 19 U.S.C. § 1481; declared value under 19 U.S.C. § 1484 and 1401a; country of origin under 19 C.F.R. Part 134, Subparts B and E (and other); intellectual property rights restrictions under 19 C.F.R. § 133.21; forced labor laws including 19 U.S.C. § 1307 and 19 C.F.R. § 12.42 to 12.44; and antidumping or countervailing duty investigations or determinations, *see* 19 C.F.R. § 141.61.

### b. Lacey Act

The Lacey Act makes it unlawful to import, export, transport, receive, buy, or sell covered materials (including wood products) taken or traded in violation of domestic or foreign laws designed to protect plants or animals.[1] This means that the import into the United States of plants or plant products harvested in violation of foreign law (including without appropriate permits) violates the Act. The Act includes a "due care" standard to encourage inquiry into legal harvest and sourcing of plant products. The Act also makes it unlawful to falsify or submit falsified

---

[1] *See* 16 U.S.C. § 3372(a); 7 C.F.R. § 357.1. Under the Lacey Act, "plant" includes "[a]ny wild member of the plant kingdom, including roots, seeds, parts or product thereof, and including trees from either natural or planted forest stands." 16 U.S.C. § 3371(f). Relevant information on the Lacey Act, regulations, and government guidance can be found at https://www.aphis.usda.gov/plant-imports/lacey-act.

1

U.S. v. Tip the Scale, LLC, 3:24-cr-05013
Attachment A

documents, accounts, or records of any plant covered by the Lacey Act or import plants and plant products (with some exemptions) without an import declaration.[2] Violations carry serious penalties for companies and individuals.[3]

3. **Compliance Responsibility**

   a. LDKB shall appoint a Chief Compliance Officer (CCO). The CCO shall be responsible for the oversight of the Company's import practices, including meeting all requirements of the Lacey Act and related regulations. The CCO shall report directly to LDKB's Chief Executive Officer (CEO) and is authorized to report on such matters to the CEO of the Company at any time.

   b. LDKB's CCO is Tran Dip, who can be reached at LD Kitchen & Bath, 1201 Puyallup Avenue, Tacoma, WA 98421, (253) 627-1172.

   c. LDKB's CCO will maintain access to appropriate Customs compliance resources for its import activities, including Title 19 of the United States Code; Title 19 of the Code of Federal Regulations; the HTSUS; Customs Rulings Online; and World Customs Organization (WCO) Explanatory Notes.

   d. LDKB employees must advise LDKB's CCO of any proposal to import goods before a contract for the purchase and import of goods is signed or a purchase order is issued and may not proceed with any proposal to import goods without the approval of the CCO.

   e. The CCO will maintain a record of the disposition of each request to import.

4. **Supplier Validation**

The CCO shall be responsible for implementing procedures designed to ensure that LDKB does not conduct import business with suppliers and other vendors whose products or activities are in violation of the U.S. Customs laws and regulations administered by CBP.

All LDKB suppliers of products originating outside the United States will be required to certify that they have implemented reasonable procedures to ensure compliance with all applicable trade

---

[2] *See* USDA, "Violating the Lacey Act Declaration Requirement," *available at* https://www.aphis.usda.gov/plant-imports/lacey-act/violation.

[3] Individuals and companies may face criminal penalties if they knowingly, and in some cases with lack of due care, violate the Lacey Act. A misdemeanor violation of the Lacey Act, punishable by up to one year in prison and a fine of $100,000 for individuals and $200,000 for companies, may result if, in the exercise of due care, the individual or the company should have known that the wood or plant product it purchased was illegally taken, possessed, transported, or sold. Felony culpability, punishable by up to five years in prison and a fine of $250,000 for individuals and $500,000 for companies, may arise for knowing violations of the Lacey Act. In addition to criminal penalties mentioned above, the Lacey Act authorizes civil fines and/or forfeitures for violations. Forfeiture of illegally trafficked plants may be imposed whether or not the owner knew or should have known of the illegality. Forfeiture of the instrumentalities of a Lacey Act violation (for example, vehicles used to transport the illegal material, or to harvest or process it) may occur after a felony conviction is entered as to an individual or company. 16 U.S.C. §§ 3371, *et seq.*

laws, including the Lacey Act. LDKB will obtain a written description of the supplier's Lacey Act compliance procedures prior to ordering any goods from the supplier.

When considering a contractual relationship with a new supplier or vendor of merchandise that LDKB intends to import into the United States, the CCO will complete a series of procedures to ensure the vendor is able to meet the Company's standards. These procedures will include, but are not limited to:

a. A risk assessment as described herein;

b. A sample purchase order-level evaluation as described herein; and

c. An in-person audit by an LDKB employee, appropriate third-party certification body, or third-party auditor with specialized industry experience.

The CCO will be responsible for memorializing the above steps. The CCO must provide written authorization to conduct business with a new supplier before the Company engages in any transactions with that new supplier.

### a. Risk Assessment

Before establishing or continuing a relationship with a foreign supplier, LDKB will use a risk-based approach to the implementation of the various elements of its import compliance program, including compliance with the Lacey Act.

a. The Risk Assessment shall be implemented according to the following schedule:

   (i) For a new supplier of wood products located outside the United States, prior to the import or shipment to the United States;

   (ii) For an existing and continued supplier of wood product located outside the United States, by no later than July 31, 2024;

   (iii) For an existing and continued supplier of wood products that LDKB imports, prior to onboarding or shipping to the United States any product line or SKU that includes a high-risk product or plants that are listed on any Appendix of the Convention on International Trade in Endangered Species of Wild Fauna and Flora (without regard to purported country of origin for Appendix III species); although if such a supplier has already undergone a full risk assessment within the previous twelve months, a targeted risk assessment, which must include an in-person site visit, may be conducted with regard to the new product line/SKU.

b. In evaluating risk of a foreign supplier of merchandise that LDKB imports, LDKB's CCO will consider, in addition to other factors:

   (i) Product Risk:

       (1) Any legal/regulatory requirements related to the raw materials for a specific product (such as logging bans or export quotas);

3

      (2)  Reported instances of illegal or unethical logging in the relevant geographical region or related to the relevant product or species;

      (3)  The potential for species substitution;

      (4)  The protected status of the species used in the product;

  (ii)  Foreign Supplier Risk

      (1)  The level of vertical integration between forest and supplier;

      (2)  Country-level corruption ratings from third party sources;

      (3)  Legality concerns noted by private sector or government third parties;

      (4)  Unusual "deals" or sales methods (e.g., kickbacks);

      (5)  Relative market and offer prices;

      (6)  Results of an in-person audit at the supplier's place of business, completed by an LDKB employee, third-party certification body, or third-party auditor with specialized industry expertise; and

      (7)  The foreign supplier's past and present ability to provide documentation that appears to be legitimate and consistent with legal harvest and sufficient to demonstrate chain of custody.

c. LDKB, may also consider the following factors,

  (i)  The length of the relationship between LDKB and the supplier;

  (ii)  The importance of the product to LDKB; and

  (iii)  The amount of a product purchased per year or the amount of product purchased from a supplier per year;

Once all of these factors, and any others found to be appropriate, are considered as part of an objective matrix and are given a risk level, the Company will designate each supplier and plant products species as low risk, medium risk, or high risk, and set out specific restrictions regarding doing business with each supplier, such as additional approval or other monitoring requirements (if any) beyond what is set forth herein that are deemed appropriate. If the supplier is providing a product that is considered high risk per the above factors, then that supplier will automatically be considered high risk. Further, the factors enumerated in subparagraph c) above may not constitute more than 10% of any objective risk matrix.

If a supplier is considered medium or high risk, then the CCO must give initial approval before any product is purchased or any transactions are completed that would result in a shipment to United States of product from such a supplier. The CCO must make a written record of the decision-making process.

LDKB will evaluate a supplier of merchandise it imports every three years if low risk, every two years if medium risk, and every year if high risk. If the Company has never purchased products

U.S. v. Tip the Scale, LLC, 3:24-cr-05013
Attachment A

from the supplier, then the evaluation must take place before the Company begins to import product from that supplier into the United States.

LDKB will continuously evaluate a risk assessment of its import activities to stay current with legislative/regulatory updates and external trends. The CCO shall be responsible for the development and implementation of risk-assessment procedures designed to address all components of the Import Compliance Program, but any modifications to the Program shall not be less stringent that what is set forth in this Framework.

### b. Purchase Order Review

The CCO shall be responsible for creating and implementing a risk-based approach to ensure that LDKB's Purchase Orders ("POs") for merchandise that LDKB intends to import into the United States comply with the Lacey Act. The purpose of the PO review is not just to audit the PO documents, but to ensure that by July 31, 2024, LDKB can establish an unbroken and verified chain of custody for its imported merchandise from itself back to the product's source using documentation down to the forest level.

At a minimum, prior to its importation of any wood product, LDKB's CCO or other employee shall:

i) Review and catalog all supplemental documentation showing the harvest location, harvest legality, and chain of custody for timber used to fulfill each purchase order.

ii) If the documentation is not written in a language known to the reviewing staff, the Company shall procure a translation;

iii) Review relative market and offer prices;

iv) Determine whether the supplemental documentation has been previously used;

v) Determine whether the supplemental documentation supports the quantity of timber included in the PO;

vi) Determine whether all supplemental documentation is internally consistent and rational (e.g., the timber species is the same across all documents, there are no extensive temporal gaps, the timing is rational, the species actually grows in that area, etc.);

vii) Review the PPQ-505 declaration to determine if all information is consistent with and supported by supplemental documentation;

viii) Submit the PPQ-505 declaration at the time of import, prior to submission to USDA-APHIS; and

ix) Document the decision as to whether the purchase order, in consideration of above factors and the product and supplier risk, reasonably appears to be legally sourced, including the basis for that decision.

Required documentation may be compiled by a non-U.S. based employee trained in Lacey Act compliance that reports to LBKB's CCO. Additional monitoring and auditing processes (if

U.S. v. Tip the Scale, LLC, 3:24-cr-05013
Attachment A

deemed appropriate) conducted by U.S. based employees reporting to the CCO (either on a full time or project basis) shall be implemented, based on risk level of product and supplier. To be clear, each PO for a medium or high-risk product or from a medium or high-risk supplier shall be reviewed and analyzed as above and requires clearance before LDKB imports the merchandise into the United States, and if cleared, such clearance must be signed off by the CCO, or the CCO's designee.

If any purchase order is not accompanied by sufficient supplemental documentation to support legality, or the PPQ-505 declaration cannot be supported by the supplemental documentation, then LDKB will not accept the product until such documentation is provided to LDKB. If the documentation is not provided within a reasonable time, then LDKB will not import the product. If a product has already been shipped at the time that a deficiency is identified, then the Company shall reject the product and ship it back to the supplier.

## 5. Miscellaneous

### c. Auditing and Monitoring

The CCO, using either internal or third-party resources, shall ensure that appropriate auditing and monitoring procedures are conducted of all foreign suppliers approved through the risk assessment and validation processes described above. These procedures shall include field and desk audits to verify that Company requirements are being met, identification of necessary corrective action, and ensuring that ongoing monitoring is incorporated into the Company's import activities.

LDKB will engage an auditor, to be determined by LDKB and approved by the government, and pay for an audit of the compliance procedures set forth here. The audit will be commenced upon the government's request, not less than one year after the compliance plan begins. The audit report will be provided to the government and LDKB. The government and LDKB will then confer in good faith to determine whether any additional audits or other measures are appropriate and/or necessary.

### d. Remediation and Mitigation

The CCO shall be responsible for remediation and mitigation. Corrective action plans and verification procedure(s) shall be used when missteps are detected during audit monitoring and/or review processes, or otherwise. If, at any point during its import activities, the Company becomes aware that a product does not adhere to LDKB's requirements, the Company will reject the shipment and refuse to import, return, and/or refuse receipt of the product as appropriate at that point in the import cycle. Further, LDKB may require DNA and/or isotope testing of products as needed to verify that the genus, species, and/or growing region of a raw material used to produce a product is consistent with the information provided by the supplier. For any medium or high-risk products, a program of random species identification of products will be developed and implemented on an ongoing basis beginning no later than September 30, 2024.

If, at any point, an LDKB employee determines that the Company is not internally capable of sufficiently auditing or evaluating a supplier or a product, then that concern should be reported through appropriate channels to the CCO. The CCO shall make a record of the concern, consider the concern, and where appropriate, either increase internal capabilities as needed, or engage a

third-party to conduct the activities that the Company cannot sufficiently complete internally. If the decision is made that the reported concern was unfounded, the CCO shall make a record of that decision and the basis therefore.

### e. Training and Communication

Annual training regarding the Company's import compliance program will be required for all officers and employees participating in importation. The CCO will identify such persons, and tailor training based upon the degree to which the persons' duties relate to Lacey Act and import compliance. A record will be maintained of the identity and position of each person trained each year, and the date(s) of training.

### f. Disciplinary Action for Non-Compliance

Any Company employee or agent who is found to have violated any of the procedures contained in the Company's Import Compliance Program will be subject to disciplinary action including possible termination. The Company will maintain records related to any such disciplinary action in the personnel files of any affected employee.

### e. Reporting Violations

LDKB's officers and employees are required to promptly report suspected violations of any of the laws discussed herein to LDKB's CCO. If an officer or employee wishes to remain anonymous, he or she may make an anonymous report addressed to the CCO, providing as much detail as possible, including copies of any documents he or she believes may be relevant to the issue.

### e. Anti-Retaliation Policy

LDKB strictly prohibits any form of retaliatory action against anyone who in good faith raises issues, asks questions, makes reports, participates in an investigation, refuses to participate in suspected improper or wrongful activity or otherwise exercises workplace rights protected by law. Retaliatory action includes but is not limited to demotion, suspension, termination, and creating a hostile work environment. LDKB prohibits retaliation even if concerns raised are not confirmed following an investigation.

### f. Records Retention

LDKB will retain all records related to import compliance for a minimum of 5 years.